## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### *Southern Division*

| | |
|---|---|
| **JERRY L. GIBSON** | * |
| **Plaintiff,** | * |
| **v.** | * |
| | Civil No.: PWG-19-1935 |
| **FORT MYER CONSTRUCTION CORP.** | * |
| **Defendant.** | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM OPINION AND ORDER

On September 22, 2016, Plaintiff Jerry Gibson was delivering molten asphalt via truck to Defendant Fort Myer Construction Corp. Defendant's employees mistakenly gave Plaintiff a hose to a tack tank instead of the asphalt tank and started pumping the asphalt into the tack tank. After Defendant's employees realized the error, the parties attempted to clear the hose and disconnect it. But when the hose was disconnected, molten asphalt sprayed Plaintiff on his face and body. Plaintiff brings a claim for one count of negligence. Defendant moves for summary judgment, arguing that Plaintiff cannot show proximate cause and fails to offer expert testimony.[1] Because there are questions of material fact as to causation and expert testimony is not required, Defendant's motion for summary judgment is denied.

### BACKGROUND

Plaintiff is a driver for Fleet Transit, which, among other things, delivers molten asphalt to customers including Defendant. ECF No. 24-1 ("Gibson Depo.") at 20:5-10, 25:11-21. The molten asphalt is contained in a trailer connected to a truck and is deposited into a customer's

---

[1] The motion is fully briefed. *See* ECF Nos. 24, 27, 28. A hearing is not necessary. *See* Loc. R. 105.6 (D. Md. 2018).

asphalt holding tank via a hose from the trailer to the tank.  *See* ECF No. 24-1 ("McNeil Depo.") at 9:3–15:9; 34:19–35:10. Gibson Depo. at 28:20–50:3.  On September 22, 2016, Plaintiff was delivering molten asphalt to Defendant.  McNeil Depo. at 8:20–9:1.  Two of Defendant's employees were on site at the time.  Gibson Depo. at 55:7–22.  One of the employees did not speak English, and the other employee translated for him.  *Id.* at 55:15-21.  The employees gave Plaintiff a hose to connect Plaintiff's trailer to a tank that was behind a wall only visible to the employees. *Id.* at 60:15-61:4; 63:2-16.  The pump that was used to pump the molten asphalt out of the trailer into the tank was also behind the wall and controlled by the employees.  *Id.* at 61:6-18.  Plaintiff went through his standard procedures and connected the hose to his trailer and the employees started to pump the molten asphalt into their tank.  *Id.* at 64:14-22.  After approximately five minutes, the employees told Plaintiff to shut it off because they had mistakenly given Plaintiff the hose to a tack tank, instead of an asphalt tank.  *Id.* at 65:8-19.  Plaintiff told the employees that they needed to clear the molten asphalt out of the line before the hose could be disconnected.  *Id.* at 65:20–66:8.  The employees told Plaintiff, "we got you" and began to run the pump to clear the line.  *Id.* at 66:9-13.  As described further below, it is unclear from the record before the Court whether Defendant's employees were running the pump to push the remainder of the molten asphalt in the hose into the tank, or if they reversed the pump to push the molten asphalt back into the trailer.

After approximately five minutes, Plaintiff noticed the hose was light, which suggested the line was clear.  Gibson Depo. at 66:12-17.  One of the employees said, "You good.  You good." *Id.* at 66:18-19.  Plaintiff then commenced his standard safety procedure for unhooking the hose. *Id.* at 67:4-9.  But when he disconnected the hose, it sprayed molten asphalt on him.  *Id.* at 67:67:10-19.  The molten asphalt burned Plaintiff on his face and body.  *Id.* at 81:18–82:5.

Eventually 911 was called and Plaintiff was taken to the hospital where he spent several days in intensive care. *Id.* at 84:2–89:8.

On June 10, 2019, Plaintiff filed the Complaint in this action in the Circuit Court for Prince George's County, Maryland. On July 2, 2019, Defendant removed the case to this Court based on diversity of citizenship under 28 U.S.C. § 1332(a)(1). ECF No. 1. Defendant filed an answer, ECF No. 7, and the parties proceeded with discovery. Pending is Defendant's motion for summary judgment, ECF No. 24.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides for the judgment in favor of the movant "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Only factual disputes that "might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The factual dispute must be genuine to defeat a motion for summary judgment, in that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record . . . a court should not adopt that version."). It is the nonmoving party's burden to confront a motion for summary judgment with affirmative evidence to show that a genuine dispute of material fact exists. *Anderson*, 477 U.S. at 256; Fed. R. Civ. P. 56(c)(1). "[T]o survive the defendant's motion, [the plaintiff] need only present evidence from which a jury might return a verdict in his favor." *Id.* "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

## ANALYIS

The Court must first determine what law to apply. Plaintiff alleges one count for negligence. Plaintiff is a citizen of Maryland and Defendant is a citizen of the District of Columbia. The incident occurred in the District of Columbia. Plaintiff does not allege which state's law he is bringing his claim of negligence under. Defendant provides citations to both Maryland and the District of Columbia law in its motion for summary judgment. Plaintiff cites only Maryland law in his opposition.

In this case, the Court has diversity of citizenship jurisdiction. "In an action based upon diversity of citizenship, the relevant state law controls. The district court must apply the law of the forum state, including its choice of law rules." *Limbach Co., LLC v. Zurich Am. Ins. Co.*, 396 F.3d 358, 361 (4th Cir. 2005) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Because Maryland is the state where Plaintiff initiated this action, Maryland is the forum state. Therefore, I look to Maryland law to determine what state law applies to the negligence claim asserted by Plaintiff. *Cremi v. Brown*, 955 F. Supp. 499, 522 (D. Md. 1997) ("This Court is obligated to follow Maryland's choice of law rules in determining which jurisdiction's substantive law applies to the [Plaintiff's] state law claims in this case for . . . negligence."). "Maryland adheres to the *lex doci delicti* rule in analyzing choice of law problems with respect to causes of action sounding in tort." *Ben-Joseph v. Mt. Airy Auto Transporters, LLC*, 529 F. Supp. 2d 604, 606 (D. Md. 2008) (citing *Erie Ins. Exch. v. Heffernan*, 925 A.2d 636, 648–49 (Md. 2007); *Lab. Corp. of Am. v. Hood*, 911 A.2d 841, 844 (Md. 2006); *Philip Morris v. Angeletti*, 752 A.2d 200, 230 (Md. 2000)). "Under *lex loci delicti,* the law of the state where the tort or wrong was committed applies." *Id.* (citing *Hood,* 911 A.2d at 844.). Here the alleged tort was committed in the District of Columbia.

Therefore, a Maryland court would apply District of Columbia law to this case, and this Court must do the same.

Under District of Columbia law, "'[a] claim alleging the tort of negligence must show: (1) that the defendant owed a duty to the plaintiff, (2) breach of that duty, and (3) injury to the plaintiff that was proximately caused by the breach.'" *Poola v. Howard Univ.*, 147 A.3d 267, 289 (D.C. 2016) (*quoting Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 793 (D.C. 2011)). Defendant argues that it is entitled to summary judgment because there is no evidence that it was the proximate cause of Plaintiff's injuries. "[P]roximate cause has two components: 'cause-in-fact' and a 'policy element.'" *District of Columbia v. Carlson*, 793 A.2d 1285, 1288 (D.C. 2002) (*quoting Lacy v. District of Columbia*, 424 A.2d 317, 320–321 (D.C. 1980)). For the "cause-in-fact" component, the District of Columbia "has adopted the 'substantial factor' test set out in the Restatement of Torts for determining whether a negligent act or omission is the cause-in-fact of a plaintiff's injury." *Id.* Under that test, "'[t]he actor's negligent conduct is a legal cause of harm to another if . . . his conduct is a substantial factor in bringing about the harm . . . .'" *Id.* quoting RESTATEMENT (SECOND) OF TORTS § 431 (1965)). For the "policy element" of proximate cause, a defendant is not liable "when the chain of events leading to the plaintiff's injury is unforeseeable or 'highly extraordinary in retrospect.'" *Id.* (*quoting Lacy v. District of Columbia*, 424 A.2d 317, 320–321 (D.C. 1980)).

Defendant argues that there is no evidence to show that Defendant was the cause-in-fact of Plaintiff's injuries or that the injuries were foreseeable. I disagree. There are questions of material fact as to the cause-in-fact of the molten asphalt spewing out of the hose that resulted in Plaintiff's injuries. First, it is undisputed that Defendant's employees gave Plaintiff the hose to the wrong

tank to pump the molten asphalt through.  There is a question of material fact whether this was a substantial factor in causing Plaintiff's injuries.

Second, there is a question of material fact as to whether Defendant's employee reversed the flow of the pump, which caused molten asphalt to spray out.  During his deposition, Plaintiff described  his communication with one of Defendant's employees as follows:

> He[] said: Wrong line, wrong line.  I said: Okay.  But you got to take the product in that line.  Because I wasn't for sure if they had a reverse pump -- you know what I mean? -- they can blow it back into the trailer.  I couldn't -- they didn't understand that part.  They just -- the part they understood was just pumping into the tanks.  So I asked them, you know, I said: You got to clear the line out.  And I hear the guy: We got you.  We got you.  I said: Okay.  So I wait about five minutes.  And I can hear the pump running.

*Id.* at 65:22–66:13.  Repeating the story later in the deposition, Plaintiff stated:

> I told him: You got to keep the pump going to clear the line out. I said: I can't unhook that if you ain't got a back -- you know, you can't blow it back into the truck.  He said: We got you.

*Id.* at 71:17-22.  When asked by Defendant's counsel why there was still asphalt in the line when it sprayed out, Plaintiff answered:

> [Plaintiff:] The only thing I would think is the valve was shut.  It had enough vacuum there, you know, like a leakage or something in the valve to where it would suck like a, like a vacuum. . . . You know, if he's got a little seepage in the valve or the valve's weak, it's still sucking that fluid back as far as it's going to go.  But then when you get the whole -- you know, the cam lock thing, it's going to come back out.
>
> [Counsel:]  But if that were the case, wouldn't asphalt have come out when you opened the bleeder?
>
> [Plaintiff:]. You would think.  But there was enough vacuum there -- you know what I'm saying?  It was sucking like there was nothing there.  I mean, I don't know if he accidentally hit the button and reversed it, or if that -- you, know, I don't know. I don't go back there.  I don't know what their equipment is like.

74:1–75:6.  Thus, during the deposition, Plaintiff was not sure why the molten asphalt was in the line, but offered two theories: that a valve was shut creating a vacuum or that Defendant's

employee had reversed the pump.  In an affidavit submitted along with his response in opposition

to the motion for summary judgment, Plaintiff supplemented his deposition testimony, stating:  "In

my experience, this mistake occurred because the Fort Myer employee controlling the pump

reversed the pump as I was disconnecting the hose, either out of panic or by mistake."  ECF No.

27-3 ("Gibson Affidavit") at ¶ 9.  Taken together, whether the molten asphalt spewed out of the

house because the pump was put in reverse or for some other reason is a question of material fact.

      Defendant argues that Plaintiff's belief that the molten asphalt spewed out of the line

because the pump was in reverse is an unsupported opinion that should not be credited, given that

he was unsure in his deposition.  But, as a person whose job involved delivery of hot asphalt to

users like the Defendant, Fed. R. Evid. 701 permits Plaintiff to  express his opinion regarding how

the accident occurred, if it is rationally based upon his perception, would be helpful to the jury in

understanding the evidence, and the subject matter does not involve scientific or highly technical

matters that are reserved for expert witnesses under Fed. R. Evid. 702.  Because Plaintiff's

deposition testimony reflects that his work experience provided him with a basis for explaining

how the Defendant's employees could have been responsible for the accident, based on his job

experience, and because he was present and perceived the events as they unfolded, he will be

permitted to explain at trial, as he did in his deposition, his opinion as to the possible causes of the

accident.  Defendant will be able to question Plaintiff regarding these matters in front of the jury

and the jury will properly make a determination regarding Plaintiff's credibility and the weight to

give his testimony.

      Defendant also argues that there is no evidence that Plaintiff's injuries were foreseeable.

Defendant points out that Plaintiff stated in his deposition that he was satisfied based on his

ordinary procedures that the line was clear of molten asphalt before disconnecting the hose.

Gibson Depo. at 77:5-8.  Defendant argues that if the asphalt spewing out of the hose was not foreseeable to Plaintiff, then it was equally unforeseeable to Defendant.  But this argument ignores Plaintiff's theory of causality.  If a jury finds that Defendant's mistake in giving Plaintiff the wrong hose or Defendant's control of the pump was a substantial factor in causing Plaintiff's injuries, it could also find that Plaintiff's injuries were a foreseeable result of those actions.  This is a question of material fact that again makes summary judgment inappropriate.

Finally, Defendant argues that expert testimony is required to opine on the cause of the accident.  Because Plaintiff did not designate an expert, Defendant argues that it is entitled to summary judgment.  But, as I have already noted, Federal Rule of Evidence 701 provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

The Court of Appeals for the District of Columbia has explained:

> Proof of a deviation from the proper standard of care does not require expert testimony where the events from which the negligence arose are "within the realm of common knowledge and everyday experience."  *Matthews v. District of Columbia*, 387 A.2d 731, 734–35 (D.C. 1978); *see Gaither v. District of Columbia*, 333 A.2d 57, 60 (D.C. 1975).  However, expert testimony is required when the subject presented is "so distinctly related to some science, profession, business or occupation as to be beyond the ken of the average layman."  *Hughes v. District of Columbia*, 425 A.2d 1299, 1303 (D.C.1981).

*Jimenez v. Hawk*, 683 A.2d 457, 462 (D.C. 1996) (quoting *District of Columbia v. White*, 442 A.2d 159, 164 (D.C. 1982)).  "[T]he causes of action that *require* expert testimony are rare."  *Id.* at 462 n.3. (*quoting Columbus Properties, Inc. v. O'Connell*, 644 A.2d 444, 447 (D.C.1994)) (emphasis in original).

Defendant argues that in this case the issue of causation requires testimony based on scientific, technical, or other specialized knowledge that falls under Rule 702, but that Plaintiff

himself is not qualified as an expert.   Specifically, Defendant argues that expert testimony is required to show causation because "the operation of this equipment involves multiple mechanical connections, the dynamics of pumps for hot liquid and a determination at what point in the process something went wrong."   Def. Reply, ECF No. 28 at 2.

In *Jiminez*, the case cited by Defendant to support its argument regarding expert testimony under D.C. law, the D.C. Court of Appeals found that expert testimony was not required for a jury to find that the Defendant was negligent in leaving exposed tanks of motor oil on a worksite that caused the plaintiff severe burns after a spark ignited the fumes.   683 A.2d at 462–63.   The court explained:

> The jury in the instant case surely could use its common sense and everyday experience to infer reasonably from the evidence that an abandoned tank neither removed from nor secured in the ground as required by the D.C. Fire Code, in which used motor oil had been stored over the years, constituted negligence; and that when pipes leading into the tanks were wholly or partially exposed to the work area where appellant was welding (i.e., the so-called auto bin), the resultant sparks constituted a fire hazard for a person working there. The jury could further find, without the need of expert testimony, that on the day in question sparks entered the pipes because the pipes and tank were not secured properly; and, as a consequence, the sparks struck oil which was in the tank either because it had not been completely drained in 1988, or improperly dumped down the open pipes subsequent to 1988.

*Id*.   This case is similar.   Here a jury could use its common sense to find that pumping a hose with molten asphalt to the wrong tank, which required flushing the hose and disconnecting it, was a substantial factor in the accident without the need for any expert testimony.   Likewise, a jury could use its general knowledge to understand that if a pump is reversed it could spray molten asphalt in the wrong direction out of the hose.   And although this will require an understanding of the basic design of the truck, trailer, hose, pump, and tank, the record shows that both Plaintiff and Plaintiff's supervisor clearly and succinctly explained this in their depositions.   *See* McNeil Depo. at 9:3–15:9; 34:19–35:10. Gibson Depo. at 28:20–50:3.   Defendant's counsel apparently had little

difficulty understanding this and neither would a jury.  Therefore, the lack of expert testimony does not warrant summary judgment.

## CONCLUSION

Defendant's motion for summary judgment is denied.  There are questions of material fact regarding the proximate cause of Plaintiff's injuries.  To answer these questions, the jury need not rely on expert testimony.  This case shall be set for trial.

## ORDER

For the foregoing reasons, it is, this 23rd day of March, 2021, hereby ORDERED that:

1.  Defendant's Motion for Summary Judgment, ECF No. 24 is denied;

2.  A telephone conference will be scheduled with the parties to discuss further proceedings in this case.

_____/S/_____
Paul W. Grimm
United States District Judge